OPINION *Page 2 
{¶ 1} Defendant-appellant Bert E. Logan appeals his conviction and sentence entered by the Richland County Court of Common Pleas, on one count of drug possession, in violation of R.C. 2925.11(A), after the trial court found Appellant guilty upon his entering a no contest plea. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS {¶ 2} On June 8, 2006, the Richland County Grand Jury indicted Appellant on one count of possession of drugs, in violation of R.C. 2925.11(A), a felony of the fifth degree, with a vehicle forfeiture specification. Appellant appeared before the trial court for arraignment and entered a plea of not guilty to the charge. On October 5, 2006, Appellant filed a Motion to Suppress and Request to Disclose Confidential Informant, in which Appellant sought suppression of any and all evidence seized by law enforcement officers as the result of a warrantless search and seizure, following a traffic stop. The trial court conducted a hearing on the motion on November 29, 2006.
 {¶ 3} Captain Larry Faith of the Richland County Sheriffs Department testified sometime around March 14, 2006, he spoke with an individual, who was incarcerated in the county jail, and who was an admitted heroin abuser. This individual informed law enforcement officials he would be willing to make some heroin buys for them. He did not want money, but merely wanted revenge on the person from whom he purchased heroin, which resulted in his, his girlfriend's, and his brother's becoming addicted.
 {¶ 4} The informant advised Captain Faith his main supplier for heroin was a person named "John", however, he did not know John's last name. John was living with *Page 3 
Appellant and his girlfriend in the Fairhaven trailer park. The informant advised Captain Faith Appellant drove a purple S-10 pickup truck and a small black compact car. Captain Faith proceeded to the trailer park in an unmarked car. The Captain drove by the address the informant had given him and obtained a description of the trailer as well as the license plate numbers of the two vehicles. One of the vehicles was registered to Appellant and the other to Appellant's girlfriend. The informant identified Appellant and his girlfriend from photographs shown to him by Captain Faith.
 {¶ 5} Captain Faith arranged for the informant to make controlled phone calls to John. However, those attempts were unsuccessful. The informant eventually had a phone conversation with Appellant. The informant spoke with Appellant's girlfriend during a subsequent call. She advised him Appellant and John had travelled to Columbus to purchase heroin, however, that supply had already been sold. Appellant's girlfriend added the only heroin they had left was for their personal use and they would not sell it. The telephone conversation between Appellant's girlfriend and the informant occurred sometime around March 22, 2006. The informant placed the telephone calls to Appellant and his girlfriend from a payphone and the calls were not recorded.
 {¶ 6} On March 24, 2006, Captain Faith received a call from the informant, advising the captain he had spoken with either Appellant or John. The two men were in Columbus picking up heroin and would return to the area in approximately one hour. After receiving the information, Captain Faith contacted Sergeant Don Zehner and instructed him to make a vehicle stop. Captain Faith also contacted Detective Metcalf and Sergeant Mayer and instructed them to proceed to the area on route to Appellant's trailer. The informant indicated Appellant and John might have a weapon as he had *Page 4 
seen John with a weapon in the past. Detective Metcalf and Sergeant Mayer spotted Appellant's truck and called Captain Faith on the radio. Although the officers were expecting two individuals in the vehicle, Appellant was alone. Captain Faith radioed Sergeant Zehner and informed him Appellant's vehicle was in the area. Sergeant Zehner observed Appellant's truck, followed him into the trailer park, and stopped behind Appellant after he parked the vehicle. Captain Faith explained, by the time he arrived, Appellant was in handcuffs, lying on the ground.
 {¶ 7} Sergeant Don Zehner testified he was working second shift on March 24, 2006, in a marked cruiser. Captain Faith contacted him in reference to a subject traveling toward the Fairhaven trailer park, who was possibly armed and carrying a significant quantity of powdered cocaine. Captain Faith gave Sergeant Zehner a description of a vehicle, the subject's name, and the direction in which he was traveling. Captain Faith instructed the Sergeant to go to the area and stop the vehicle. Sergeant Zehner proceeded to an area near the trailer park and sat stationary, waiting for Appellant's vehicle. When Appellant's vehicle came into sight, Sergeant Zehner turned on his radar unit and clocked the vehicle traveling 36 mile/hour in a posted 25 mile/hour zone. The Sergeant stopped Appellant's vehicle at the entrance of the trailer park. Captain Faith, Sergeant Mayer, and Detective Metcalf as well as another detective immediately pulled in behind Sergeant Zehner. When Appellant exited his vehicle, the officers converged on him and Sergeant Zehner placed him in handcuffs. Detective Metcalf and Sergeant Zehner each conducted a quick pat down of Appellant, but neither officer found a weapon. Detective Metcalf did, however, discover a hard eyeglass case in which he found a bag of a powdered substance which was ultimately determined to *Page 5 
be cocaine. Detective Metcalf also found a large sum of money on Appellant's person. The eyeglass case was large enough to hold a knife, a wire with which to strangle someone, or a small gun.
 {¶ 8} After hearing the evidence, the trial court took the matter under advisement. Via Judgment Entry filed February 15, 2007, the trial court overruled Appellant's motion, finding Sergeant Zehner had reason to stop Appellant for violating speed laws, and all of the officers were acting with sufficient probable cause to arrest Appellant. The trial court further found the officers had verified information Appellant had gone to Columbus prior to the day of his arrest to secure drugs, and he planned to make another trip on the day of his arrest. Appellant subsequently entered a plea of no contest, after which the trial court found him guilty as charged. The trial court sentenced Appellant to three years of community control. The trial court memorialized the conviction and sentence via sentencing Entry filed June 12, 2007.
 {¶ 9} It is from this conviction and sentence Appellant appeals, raising as his sole assignment of error:
 {¶ 10} "I. THE TRIAL COURT ERRED AS A MATTER OF LAW BY OVERRULING APPELLANT'S MOTION TO SUPPRESS THE SEARCH AND SEIZURE OF HIS PERSON, THUS VIOLATING HIS RIGHTS UNDER THE FOURTH AMENDMENT TO THE U.S. AND OHIO CONSTITUTIONS."
 I {¶ 11} In his sole assignment of error, Appellant maintains the trial court violated his rights under the Fourth Amendment to the United States and Ohio Constitution by overruling his motion to suppress the search and seizure of his person. *Page 6 
 {¶ 12} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. See State v.Fanning (1982), 1 Ohio St.3d 19, 437 N.E .2d 583; State v. Klein (1991),73 Ohio App.3d 486, 597 N.E.2d 1141; State v. Guysinger (1993),86 Ohio App.3d 592, 621 N.E.2d 726. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See State v. Williams (1993),86 Ohio App.3d 37, 619 N.E.2d 1141, overruled on other grounds. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case.State v. Curry (1994), 95 Ohio App.3d 93, 641 N.E.2d 1172; State v.Claytor (1993), 85 Ohio App .3d 623, 620 N.E.2d 906; Guysinger, supra. As the United States Supreme Court held in Ornelas v. U.S., (1996), 517 U.S. 690, 116 S.Ct. 1657, " . . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."
 {¶ 13} In a motion to suppress, the trial court assumes the role of trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate witness credibility. Guysinger, supra, at 594 (Citations omitted). Accordingly, an appellate court *Page 7 
is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Id. (Citation omitted).
 {¶ 14} Appellant maintains his Fourth Amendment Rights were violated because the officers did not have probable cause to support the warrantless arrest. Appellant explains the officers could not rely upon the information which the confidential informant had provided to them due to the lack of sufficient corroboration of the information and an insufficient indicia of the reliability of the informant.
 {¶ 15} "Before a law enforcement officer may stop a vehicle, the officer must have a reasonable suspicion, based upon specific and articulable facts that an occupant is or has been engaged in criminal activity." State v. Gedeon (1992), 81 Ohio App.3d 617, 618. Reasonable suspicion constitutes something less than probable cause. State v.Carlson (1995), 102 Ohio App.3d 585, 590. "[I]f the specific and articulable facts available to an officer indicate that a motorist may be committing a criminal act, * * * the officer is justified in making an investigative stop." Id. at 593. The propriety of an investigative stop must be viewed in light of the totality of the circumstances.State v. Bobo (1988), 37 Ohio St.3d 177, paragraph one of the syllabus. Thus, if the specific and articulable facts indicate to the officer the driver of an automobile may be committing a criminal act, which includes a violation of a traffic law, the officer can justifiably make an investigative stop. State v. Carlson (1995), 102 Ohio App.3d 585, 593,657 N.E.2d 591. In a situation where the officer has observed a traffic violation, the stop is constitutionally valid. Dayton v. Erickson
(1996), 76 Ohio St.3d 3, 9, 665 N.E.2d 1091. *Page 8 
 {¶ 16} Sergeant Zehner clocked Appellant's vehicle on radar, traveling 36 miles/hour in a marked 25 mile/hour zone. Accordingly, we find the stop of Appellant's vehicle was constitutionally valid.
 {¶ 17} Our next inquiry is whether the officers violated Appellant's Fourth Amendment Rights by arresting him and searching his person.
 {¶ 18} Recently, in Virginia v. Moore (2008), 128 S.Ct. 1598, 76 USLW 4237, the United States Supreme Court held: "(1) police officers did not violate the Fourth Amendment by arresting motorist whom they had probable cause to believe had violated Virginia law by driving with suspended license, even though, as matter of Virginia law, this misdemeanor offense of driving with suspended license was one for which, under particular circumstances of motorist's case, officers should have issued summons rather than made arrest; and (2) Fourth Amendment did not require exclusion of evidence that police officers obtained as result of search that was incident to their constitutionally permissible arrest of motorist." Id. at
 {¶ 19} In Moore, two Portsmouth, Virginia police officers stopped a car driven by David Lee Moore. Id. at 1601. The officers had heard over the police radio an individual known as "Chubs" was driving with a suspended license. Id. One of the officers knew Moore by that nickname. Id. The officers determined Moore's license was, in fact, suspended, initiated a stop of the vehicle, and ultimately arrested him for the misdemeanor offense of driving on a suspended license. Id. The officers subsequently searched Moore and found he was carrying 16 grams of crack cocaine and $516 in cash. Id. *Page 9 
 {¶ 20} Under Virginia law, the officers should have issued Moore a summons instead of arresting him. Id. at 1602. Driving on a suspended license, like some other misdemeanors, is not an arrestable offense in Virginia, except as to those who "fail or refuse to discontinue" the violation, and those whom the officer reasonably believes to be likely to disregard a summons, or likely to harm themselves or others. Id. (Citation omitted). The intermediate appellate court found none of these circumstances applicable, and the State of Virginia did not appeal that determination. Id. (Citation omitted).
 {¶ 21} Moore was charged with possession of cocaine with the intent to distribute, in violation of Virginia law. Id. He filed a pretrial motion to suppress the evidence from the arrest search. Id. In his motion, Moore argued suppression was required by the Fourth Amendment. Id. The trial court denied the motion, and after a bench trial, found Moore guilty of the drug charge and sentenced him accordingly. Id. Virginia's intermediate court reversed the conviction on Fourth Amendment grounds, however, the intermediate court, sitting en banc, subsequently reinstated the matter. Id. (Citation omitted). The Virginia Supreme Court reversed Moore's conviction, reasoning since the arresting officers should have issued Moore a citation under state law, and the Fourth Amendment does not permit search incident to citation, the arrest search violated the Fourth Amendment. Id. (Citation omitted). The United States Supreme Court granted certiorari. Id. (Citation omitted). TheMoore Court reversed the Virginia Supreme Court, reaffirming "against a novel challenge what we have signaled for more than half a century. When officers have probable cause to believe that a person has committed a crime in their presence, the Fourth Amendment permits them to make an *Page 10 
arrest, and to search the suspect in order to safeguard evidence and ensure their own safety." Id. at 1608.
 {¶ 22} We find Moore to be controlling, and find once Sgt. Zehner observed Appellant commit the offense of speeding, the officer was permitted to arrest Appellant and conduct a search thereafter. Accordingly, we find the trial court did not err in overruling Appellant's motion to suppress.
 {¶ 23} Appellant's sole assignment of error is overruled.
 {¶ 24} The judgment of the Richland County Court of Common Pleas is affirmed.
 Hoffman, P.J., Gwin, J. and Wise, J. concur *Page 11 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Richland County Court of Common Pleas is affirmed. Costs assessed to Appellant. *Page 1