OPINION *Page 2 
{¶ 1} Appellant, the State of Ohio, appeals the decision of the Court of Common Pleas, Guernsey County, which granted a pre-trial motion to suppress evidence filed by Defendant-Appellee Stephanie C. King. The relevant facts leading to this appeal are as follows.
 {¶ 2} On March 13, 2007, Trooper Stephen Roe of the Ohio State Highway Patrol observed a red Toyota traveling eastbound on Interstate 70. Among other things, the trooper noticed that the Toyota was tailgating a semi truck. Trooper Roe passed the Toyota, noting that the vehicle was not displaying a license plate on its front bumper, and that the windshield contained a large crack. Trooper Roe allowed the Toyota to pass him, and then executed a traffic stop.
 {¶ 3} The trooper approached the vehicle and requested that the driver, Appellee King, produce her driver's license and registration. Appellee indicated she had borrowed the car from her sister to travel to Wheeling, West Virginia. Appellee showed the trooper a State of Ohio identification card, but no driver's license. Trooper Roe, confident that he had an unlicensed driver, thereupon decided to place appellee in the front seat of his cruiser, without handcuffs. No Miranda rights were read to appellee at this point.[1]
 {¶ 4} The trooper then ran a LEADS check and found that appellee's driver's license had been suspended due to a twelve-point violation, lack of insurance, and a non-compliance violation. *Page 3 
 {¶ 5} It is undisputed that the trooper neither asked for nor obtained permission to search the interior of the Toyota. Upon completion of the LEADS check, Trooper Roe advised appellee that she would not be permitted to continue driving, and that he would have to take her to the patrol post, where she would probably have to post bond. Tr. at 14, 24.
 {¶ 6} The trooper and appellee then discussed arrangements for appellee's sister to come and pick up the Toyota. The trooper also asked if there were any weapons, drugs, or large amounts of cash in the car. Appellee replied in the negative, but asked if her cell phone could be retrieved from the front seat.
 {¶ 7} Trooper Roe also advised appellee that he was going to "secure her vehicle." Tr. at 15. He returned to the Toyota and conducted a search. In so doing, he found a bag in the center console compartment which was later determined to contain crack cocaine.
 {¶ 8} Appellee was thereupon handcuffed and read her Miranda rights.
 {¶ 9} The Guernsey County Grand Jury indicted appellee on June 14, 2007, on one count of cocaine possession, R.C. 2925.11(C)(4)(a), a felony of the third degree.
 {¶ 10} Appellee pled not guilty, and on January 14, 2008, filed a motion to suppress all evidence seized in the search of the Toyota. A hearing was conducted on the motion on February 5, 2008. On February 12, 2008, the trial court issued a judgment entry granting the motion to suppress. The trial court therein made extensive findings of fact and concluded that appellee had been in custody when she was placed in the front seat of the trooper's cruiser, and that the subsequent search and seizure was in violation of her Fourth Amendment rights. *Page 4 
 {¶ 11} The State of Ohio filed a notice of appeal and Crim. R. 12(K) certification on February 19, 2008. We therefore have jurisdiction to entertain the State's appeal. See App. R. 4(B)(4); State v. Perez, Hamilton App. Nos. C-040363, C-040364, C-040365, 2005-Ohio-1326, ¶ 12. The State herein raises the following sole Assignment of Error:
 {¶ 12} "I. THE TRIAL COURT ERRED IN GRANTING DEFENDANT/APPELLEE'S MOTION TO SUPPRESS EVIDENCE."
 I. {¶ 13} In its sole Assignment of Error, the State contends the trial court erroneously granted Appellee King's motion to suppress. We agree.
 {¶ 14} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's finding of fact. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this third type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in the given case. State v. Curry (1994), 95 Ohio App.3d 93,96; State v. Claytor (1993), 85 Ohio App.3d 623, 627; State v.Guysinger (1993), 86 Ohio App.3d 592. As the United States Supreme Court held in Ornelas v. U.S. (1996), 517 U.S. 690, 116 S.Ct. 1657, 1663,134 L.Ed.2d 911, " . . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal." *Page 5 
 {¶ 15} A warrantless search of an automobile, where police officers have probable cause to believe such vehicle contains contraband, is one of the well-recognized exceptions to the constitutional requirement of a search warrant. See, e.g., State v. Griffin (Oct. 27, 1989), Erie App. No. E-88-45, citing United States v. Ross (1982), 456 U.S. 798, 809. "[W]hen a police officer has made a lawful custodial arrest of the occupant of an automobile, the officer may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." State v. Mackey, Wayne App. No. 05CA0029, 2005-Ohio-5109, ¶ 7, quoting State v. Murrell (2002), 94 Ohio St.3d 489, 496,764 N.E.2d 986.
 {¶ 16} Murrell, supra, followed the United States Supreme Court's precedent regarding automobile searches established in New York v.Belton (1981), 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768. Unfortunately, the Belton opinion does not define "custodial arrest" for our present analysis. See, e.g., Linnett v. State (Tex. Criminal App., 1983), 647 S.W.2d 672, 674. The Ohio Supreme Court has nonetheless cautioned that "Belton does not authorize indiscriminate fishing expeditions; only motor vehicles very recently occupied by those who have already been lawfully arrested are subject to a Belton search."Murrell at 495. Clearly, however, "[w]hen officers have probable cause to believe that a person has committed a crime in their presence, the Fourth Amendment permits them to make an arrest, and to search the suspect in order to safeguard evidence and ensure their own safety."State v. Logan, Richland App. No. 07-CA-56, 2008-Ohio-2969, ¶ 21, quotingVirginia v. Moore (2008), 128 S.Ct. 1598, 1608.
 {¶ 17} By analogy, we note that in analyzing cases applying the Miranda rule, an individual is in custody "* * * when there has been a formal arrest or when the person's *Page 6 
freedom of movement is restrained such that a reasonable person in the suspect's position would believe that he or she is under arrest."State v. Tate, Mahoning App. No. 07 MA 130, 2008-Ohio-3245, ¶ 42, citingState v. Petitjean (2000), 140 Ohio App.3d 517, 523, 748 N.E.2d 133.
 {¶ 18} In the case sub judice, Trooper Roe placed appellee in his cruiser, without handcuffs, when she could only produce a state ID card, which is issued in lieu of a driver's license. Tr. at 11. The LEADS check then revealed that not only was appellee not a licensed driver, but that her license had been suspended. Tr. at 13. The trooper's testimony reveals the following from that point:
 {¶ 19} "A. At that point I am just all I am looking is (sic) I have got a driving under suspension. It's something we deal with pretty regular basis. I am looking to do two things. I am looking, if I don't have to tow the car, I am not going to. She doesn't own the vehicle, but if I have to I will. If I have to take this vehicle off the interstate I am going to. We were going to try to make contact with the owner, and verify ownership, and verify what we needed to do with the vehicle. That was going to be my intent. We hadn't been able to contact the owner as yet. I am going to secure that vehicle. I am going to do search incident to arrest, and I am going to secure that vehicle. As I said I hadn't contacted the owner yet, and then I am going to take this person, and I am going to either make them post a bond, or I am going to take them to jail.
 {¶ 20} "Q. Do you?
 {¶ 21} "A. She is from out of the area. She was from Columbus and we are in Guernsey County. *Page 7 
 {¶ 22} "Q. Do you personally, or does the patrol have a policy about handcuffing somebody that is driving under suspension?
 {¶ 23} "A. I did not feel threatened by Miss King. However, I did make her empty her pockets at the time immediately when I found out she was under suspension. She pulled her pockets inside out for me. I asked if there was anything in her purse I should know about. She handed me her purse. I opened her purse. Made sure there was nothing in there that would do me any harm. I went through it very quickly. Made sure there was nothing in there that would harm me, and placed it back to her in the passenger front side of my vehicle. I then advised her I was going up to secure her vehicle. Asked her if there was anything in the vehicle I should know about. Any guns, drugs, large sums of money. She acknowledged that there wasn't, and I proceeded to then to go back go up to the vehicle." Tr. at 14-15.
 {¶ 24} The trial court, despite finding that appellee was "`in custody' for Miranda purposes" (Judgment Entry at 5), found appellee's Fourth Amendment rights had been violated and implicitly declined to apply the "search incident to a lawful arrest" exception underBelton. Upon review, we hold the trial court erroneously decided this issue, as appellee's continued detention in the cruiser following Trooper Roe's ascertainment of a suspended license and his advisement that he would be taking her to the patrol post constituted a "custodial arrest" under the circumstances presented. *Page 8 
 {¶ 25} The State's sole Assignment of Error is therefore sustained.{¶ 26} For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Guernsey County, Ohio, is hereby reversed and remanded.
 By: Wise, J. Gwin, P. J., and Delaney, J., concur. *Page 9 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Guernsey County, Ohio, is reversed and remanded for further proceedings consistent with this opinion.
Costs assessed to Appellee.
[1] It appears undisputed that no evidence was derived from appellee's non-Mirandized statements in this case; the drugs in question were found via the trooper's subsequent physical search of the Toyota. *Page 1