[Cite as *State v. Willey*, 2025-Ohio-5496.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | Case No. 25CA000009 |
| Plaintiff - Appellee | <u>Opinion and Judgment Entry</u> |
| -vs- | Appeal from the Cambridge Municipal Court, Case No. TRC2402586 |
| ASHLEY WILLEY | Judgment: Reversed and Remanded |
| Defendant – Appellant | Date of Judgment Entry: December 8, 2025 |

**BEFORE:** Craig R. Baldwin, William B. Hoffman, Kevin W. Popham, Appellate Judges

**APPEARANCES:** William H. Ferguson, Cambridge Law Director, for Plaintiff-Appellee; James Sweeney, for Defendant-Appellant

OPINION

*Hoffman, J.*

**{¶1}**   Defendant-appellant appeals the judgment entered by the Cambridge Municipal Court convicting her following her plea of no contest to operating a motor vehicle while intoxicated (R.C. 4511.19(A)(1), hereinafter "OVI") and sentencing her to thirty days in jail.  Plaintiff-appellee is the State of Ohio.

STATEMENT OF THE FACTS AND CASE

**{¶2}**   At 11:32 p.m. on September 2, 2024, Trooper Chase Lucas of the Ohio State Highway Patrol observed a vehicle parked on the right shoulder of Interstate 70 in Guernsey County.  The vehicle's hazard lights were on.  The Trooper pulled behind the vehicle, activating his overhead lights.  He approached the vehicle to see if the vehicle was disabled or if the occupants were in need of assistance.

**{¶3}**   As the Trooper approached the passenger side of the vehicle, he noted Appellant was seated in the driver's seat, and was the sole occupant of the vehicle. Appellant appeared to be "dazed, confused and disoriented."  Supp. Tr. 9.  When he asked her to roll down the window, she seemed surprised to see him, despite the fact he had pulled directly behind her vehicle with his overhead lights activated.

**{¶4}**   Appellant told Trooper Lucas she stopped to answer a phone call.  He did not see a cell phone in the car.  He also noticed Appellant had white powder on her shirt and her face.  Appellant told the Trooper she had eaten powdered sugar donuts; however, no packaging was visible in the vehicle.  The Trooper asked Appellant for her driver's license.  She asked the Trooper if he also wanted her insurance information.  At this point, before Appellant could produce her documentation, the Trooper asked her to step out of

the vehicle.  Because the car was running, he feared Appellant might flee and drive while impaired.  The Trooper conducted field sobriety tests.

{¶5}    Appellant was charged with OVI in violation of R.C. 4511.19(A)(1) and R.C. 4511.19.  She filed a motion to suppress, arguing the Trooper lacked a reasonable and articulable suspicion of criminal activity to justify the stop of her vehicle, and lacked a reasonable and articulable suspicion of criminal activity to detain Appellant for the purpose of administering field sobriety tests.

{¶6}    The trial court overruled the motion.  The trial court found the officer's initial encounter with Appellant was not an investigative stop, but rather was a consensual encounter as a part of his community caretaking role.

{¶7}    The trial court also found the officer had a reasonable, articulable suspicion to justify detaining Appellant to administer field sobriety tests.  The trial court found the car was parked in an area where vehicles are not normally parked in the late evening hours, and Appellant initially appeared startled by the Trooper's appearance, despite the fact he had activated his overhead lights directly behind her.  The Trooper did not see a cell phone to corroborate her story as to why she was stopped, and did not see packaging to support her claim the powder on her shirt and face was from a donut.  The court held, "However, the lack of wrappers, packages or other assorted donut remnants coupled with Defendant's disoriented and startled reaction upon seeing Trooper Lucas warranted the officer's concern that Defendant may have consumed an illegal substance and gave rise to a reasonable suspicion that she was operating the vehicle while under the influence of such substance."  Judgment Entry, January 17, 2025.

{¶8} Appellant entered a plea of no contest to OVI in violation of R.C. 4511.19(A)(1), and the charge of OVI in violation of R.C. 4511.19 was dismissed. The trial court convicted Appellant upon her plea, and sentenced her to thirty days in jail. The trial court placed Appellant on probation for twelve months.

{¶9} It is from the March 7, 2025, judgment of the trial court Appellant prosecutes her appeal, assigning as error:

I. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS BECAUSE THE OFFICER LACKED REASONABLE SUSPICION TO ASK THE APPELLANT TO EXPAND THE SAFETY STOP INTO AN INVESTIGATORY OVI STOP.

II. THE TRIAL COURT ERRED IN DENYING THE MOTION TO SUPPRESS BECAUSE THE OFFICER LACKED REASONABLE SUSPICION TO ASK THE APPELLANT TO PERFORM FIELD SOBRIETY TESTS.

I., II.

{¶10} In her first assignment of error, Appellant argues the trial court erred in overruling her motion to suppress because the Trooper lacked a reasonable, articulable suspicion she was intoxicated to justify detaining her for the purpose of performing field sobriety tests. In her second assignment of error, Appellant argues the trial court erred in overruling her motion to suppress because the Trooper lacked a reasonable suspicion

of criminal activity to justify asking her to perform field sobriety tests.  Because in this case the detention occurred simultaneously with the request to perform field sobriety tests, we address both assignments of error together.

{¶11}  Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 2003-Ohio-5372, ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. *See State v. Dunlap*, 1995-Ohio-243; *State v. Fanning*, 1 Ohio St.3d 19, 20 (1982). Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. *See Burnside* at ¶ 8.   However, once this Court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard*. Id., citing State v. McNamara*, 124 Ohio App.3d 706, 707 (4th Dist. 1997); *See, generally, United States v. Arvizu*, 534 U.S. 266 (2002); *Ornelas v. United States*, 517 U.S. 690 (1996). That is, the application of the law to the trial court's findings of fact is subject to a de novo standard of review. *Ornelas* at 697. Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers." *Id*. at 698.

{¶12}  A request made of a validly detained motorist to perform field sobriety tests is generally outside the scope of the original stop and must be separately justified by other specific and articulable facts showing a reasonable basis for the request. *State v. Albaugh*, 2015-Ohio-3536, ¶ 18 (5th Dist.). Although requiring a driver to submit to a field sobriety test constitutes a seizure within the meaning of the Fourth Amendment, courts have generally held the intrusion on the driver's liberty resulting from a field sobriety test

is minor, and the officer therefore need only have reasonable suspicion the driver is intoxicated in order to conduct a field sobriety test. *See State v. Bright,* 2010-Ohio-1111, ¶ 17 (5th Dist.). In reviewing this issue, we apply a "totality of the circumstances" approach. *See, e.g., State v. Lucking*, 2004-Ohio-90, ¶ 8 (12th Dist.), *citing State v. Freeman*, 64 Ohio St.2d 291 (1980). Reasonable suspicion constitutes something less than probable cause. *State v. Logan,* 2008-Ohio-2969, ¶ 15 (5th Dist.).

{¶13} In the instant case, Trooper Lucas initially noted Appellant appeared dazed and disoriented as he approached the vehicle. However, it is apparent from his testimony he did not find her to be disoriented or confused upon interacting with her. On cross-examination, Trooper Lucas testified:

Q. And at that point that you observed white residue, there were no other signs of impairment that you put into your report; correct?

A. No, sir.

Q. Just the white residue on her?

A. Right, sir.

Q. She's not acting erratically?

A. No, sir.

Q. She's answering your questions?

A. Correct.

Q. In fact, at one time she even offers you her insurance?

A. Correct.

Q. And yet through all of that, you still make the determination that she is unfit and unsafe to even be behind the wheel of the vehicle?

A. I – I wanted to investigate the rest of it to ensure she was safe to drive.

Q. And the only reason you can think of to investigate that are – is the dazed, disoriented, and confused before you speak with her –

A. Correct.

Q. – you noticed from the back of her head and the white powder residue?

A. Correct.

Q. No other signs of impairment that – that were put in the report at least?

A. Correct.

{¶14} Supp. Tr. 25-26.

{¶15} The Trooper's opinion Appellant appeared to be dazed, disoriented, and confused was formed solely from observing her in the vehicle as he approached it from behind, before any personal interaction with Appellant. Other than her surprise when he approached the window, he noted no signs of disorientation or confusion upon his personal interaction with Appellant. Trooper Lucas testified Appellant's eyes were not bloodshot, red or glassy, her speech was not slurred, and he did not detect an odor of alcohol or narcotics. Supp. Tr. 24. Because the Trooper came upon Appellant's vehicle while it was stopped by the side of the road, there was no evidence of impaired driving.

The Trooper based his decision to ask Appellant to step out of the vehicle for field sobriety tests solely on an initial concern about her behavior which dissipated upon his one-on-one interaction with her, and the presence of white powder on her shirt and face without the visible presence of packaging to confirm her claim she had eaten powdered sugar donuts. The Trooper made no effort to determine whether the powder was in fact sugar or whether it was an illegal substance. We find the officer may have had a hunch Appellant was driving under the influence of an illegal substance, but he did not have a reasonable, articulable suspicion she was intoxicated at the point in time when he asked Appellant to step out of the vehicle for field sobriety testing. We find the trial court erred in overruling Appellant's motion to suppress.

{¶16} The first and second assignments of error are sustained. The judgment of the Cambridge Municipal Court is reversed. This case is remanded to that court for further proceedings according to law, consistent with this opinion. Costs are waived.


By: Hoffman, J.

Baldwin, P.J. and

Popham, J. concur