[Cite as *State v. Stiffler*, 2026-Ohio-1576.]

IN THE OHIO COURT OF APPEALS
FIFTH APPELLATE DISTRICT
TUSCARAWAS COUNTY, OHIO

| | |
|---|---|
| STATE OF OHIO | Case No. 2025 AP 10 0033 |
| Plaintiff - Appellee | <u>Opinion and Judgment Entry</u> |
| -vs- | Appeal from the Tuscarawas County Court of Common Pleas, Case No. 2025 CR 03 0084 |
| LEE B. STIFFLER | Judgment: Affirmed |
| Defendant - Appellant | Date of Judgment Entry: April 30, 2026 |

**BEFORE:** William B. Hoffman; Robert G. Montgomery; Kevin W. Popham, Judges

**APPEARANCES:** Kristine W. Beard, Assistant Tuscarawas County Prosecuting Attorney, for Plaintiff-Appellee; Travis Collins, for Defendant-Appellant.

*Hoffman, J.*

{¶1}   Defendant-appellant Lee Stiffler appeals the judgment entered by the Tuscarawas County Common Pleas Court following his pleas of no contest to failure to comply with an order or signal of a police officer (R.C. 2921.331) and resisting arrest (R.C. 2921.33), and sentencing him to a term of community control of two years.  Plaintiff-appellee is the State of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2}   On February 22, 2025, Officer Joshua Shaffer was working the midnight shift for the New Philadelphia Police Department.  Around 11:45 p.m. the officer was on

patrol on Wabash Avenue. The officer stopped his cruiser behind a black Audi at a traffic light. Officer Shaffer was unable to see a rear plate or temporary tag on the Audi. The Audi made a left turn onto Tuscarawas Avenue, and the officer activated his lights to initiate a stop.

{¶3} The Audi, which was driven by Appellant, briefly went up over the curb and back onto the roadway before stopping. Once stopped, the officer still could not see a rear license plate or temporary tag.

{¶4} While walking toward the vehicle, the officer saw a white piece of paper in the top left corner of the vehicle's rear window. He could not read the tag until he was standing near the taillight of the car. Officer Shaffer's ability to read the tag was further hampered by the window tint on the car.

{¶5} Appellant rolled down the window. The officer asked Appellant how he was doing and explained the reason for the stop. Appellant responded using profanity. The officer requested Appellant's license, registration, and proof of insurance. Appellant was agitated, aggressive, and belligerent toward the officer, continuing to use profanity. Due to Appellant's behavior, Officer Shaffer radioed for backup.

{¶6} Appellant produced his driver's license after rifling through some papers. When asked again for the registration and proof of insurance, Appellant became further agitated. Appellant called his mother, the owner of the vehicle, and allowed her to speak with the officer. Appellant's mother indicated she had proof of her insurance in her email and would attempt to send that to Appellant electronically. She stated the registration was in the glove compartment.

{¶7} Appellant had difficulty producing the registration. He initially handed Officer Shaffer a tire receipt. When the officer informed Appellant the document was not

the registration, Appellant handed him a bank receipt. The officer could see the registration in the stack of papers Appellant retrieved from the glove compartment, and told Appellant he would trade Appellant the tire receipt for the registration, which he pointed out to Appellant. He handed Appellant the tire receipt, and Appellant handed the officer the tire receipt a second time. Appellant finally produced the registration with help from Officer Shaffer.

{¶8} Officer Shaffer returned to the cruiser to check the status of Appellant's license and to check for warrants. Officer Shaffer discussed the situation with Sergeant Wayne Clark, who had arrived in response to the call for backup. Officer Shaffer was concerned Appellant was under the influence based on his difficulty identifying and producing the registration, his slurred speech, and his agitated and aggressive behavior. Both officers agreed Officer Shaffer should ask Appellant to step out of the vehicle to perform field sobriety tests.

{¶9} Officer Shaffer approached the vehicle again, and asked Appellant to turn off the car and step out of the vehicle. Appellant repeatedly refused. Appellant argued with the officer, then rolled up his window. Appellant drove away.

{¶10} Appellant was indicted by the Tuscarawas County Grand Jury with one count of failure to comply with the order or signal of a police officer and one count of resisting arrest. He filed a motion to suppress all evidence related to the traffic stop on the basis the officer lacked a reasonable suspicion of criminal activity to initiate the stop, lacked reasonable suspicion to detain Appellant, and lacked probable cause to arrest Appellant. The trial court overruled the motion following an evidentiary hearing.

{¶11} Appellant entered a plea of no contest to both of the charges in the indictment. The trial court sentenced him to a term of community control of two years.

It is from the October 3, 2025, judgment of the trial court Appellant prosecutes his appeal, assigning as error:

I. THE TRIAL COURT ABUSED ITS DISCRETION BY FINDING THAT OFFICER SHAFFER COULD NOT READ APPELLANT'S TEMPORARY TAG UNTIL HE WAS STANDING AT THE TAILLIGHT OF APPELLANT'S VEHICLE.

II. THE TRIAL COURT ERRED AS A MATTER OF LAW BY FINDING THAT APPELLANT'S TEMPORARY TAG WAS NOT IN "PLAIN VIEW" AS REQUIRED BY R.C. 4503.21 DUE TO WINDOW TINTING.

III. THE TRIAL COURT ABUSED ITS DISCRETION BY FINDING THAT APPELLANT DROVE ONTO THE CURB AFTER OFFICER SHAFFER INITIATED THE TRAFFIC STOP.

IV. THE TRIAL COURT ERRED BY CONCLUDING THAT APPELLANT'S AGITATION PROVIDED OFFICER SHAFFER WITH REASONABLE SUSPICION TO CONTINUE DETAINING APPELLANT AFTER READING THE TEMPORARY TAG.

{¶12} All of Appellant's assignments of error argue the trial court erred in overruling his motion to suppress.

{¶13} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside,* 2003-Ohio-5372, ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. *See State v. Dunlap*, 1995-Ohio-243;

*State v. Fanning*, 1 Ohio St.3d 19, 20 (1982). Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. *See Burnside* at ¶ 8. However, once this Court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. *Id., citing State v. McNamara,* 124 Ohio App.3d 706, 707 (4th Dist. 1997); *See, generally*, *United States v. Arvizu*, 534 U.S. 266 (2002); *Ornelas v. United States,* 517 U.S. 690 (1996). That is, the application of the law to the trial court's findings of fact is subject to a de novo standard of review. *Ornelas* at 697. Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers." *Id.* at 698.

{¶14} It is pursuant to this standard we review Appellant's assignments of error.

### I., II.

{¶15} In his first assignment of error, Appellant argues the trial court erred in finding the officer could not see the temporary tag on his vehicle until the officer was standing at the taillight. He argues from the body camera video, the officer appeared to be able to read the "Ohio" portion of the tag from a car length or more behind the vehicle. He also argues the trial court erred in finding the window tint caused the officer to believe the temporary tag was not in plain view.

{¶16} The trial court made the following finding regarding Officer Shaffer's ability to see the temporary tag on the vehicle:

The Court FINDS that the evidence establishes that Officer Shaffer reasonably believed that the vehicle was being driven in violation of R.C. 4503.21(A)(3) when he initiated the traffic stop.

The Court FINDS that Officer Shaffer was unable to see a rear plate or temporary tag on the vehicle when the police cruiser was stopped immediately behind the vehicle. Officer Shaffer did not see the temporary tag until he was walking toward the vehicle due to window tinting, and he was unable to read the temporary tag until he was standing by the taillight of the vehicle. The Court finds this testimony to be credible.

The Court FINDS that Officer Shaffer's testimony supports a finding that he reasonably believed that the temporary tag was not displayed in plain view due to the window tinting.

{¶17} Judgment Entry, July 8, 2025, p. 8.

{¶18} R.C. 4503.21(A)(3) requires a license plate or temporary tag to be displayed in plain view. The initial stop of the vehicle was based on the officer's belief the tag was not in plain view due to his inability to see the sticker from his cruiser. However, Appellant concedes in his brief he is not challenging the initial stop on appeal:

Appellant does not contest the initial stop. However, at some point after the stop, Officer Shaffer discovered that Appellant had a valid, temporary tag in the rear window of his vehicle. The issue before the Court is thus, whether Officer Shaffer had a reasonable suspicion to justify his continued detention of Appellant AFTER he was able to determine that Appellant had a valid temporary license plate in the rear window of his vehicle.

**{¶19}** Brief of Appellant, p. 5.

**{¶20}** Whether the officer was standing at the taillight or farther back when he first could read the temporary tag, whether the officer needed a flashlight to read the tag, and whether the window tint prevented the tag from being in plain view are all factual issues which go to the initial stop, and not to the continued detention. The credibility issues concerning whether the officer could read the tag go to the issue in the trial court of whether the officer initially had a reasonable suspicion to stop the car on the basis the tag was not in plain view, an issue Appellant has abandoned on appeal. We therefore find Appellant's first two assignments of error have no bearing on the issue raised on appeal of whether the continued detention of Appellant AFTER the officer was able to read the tag was valid.

**{¶21}** Further, we find no error in the trial court's factual findings. From the video, it appears the officer is standing at or near the taillight of the car when he reads the numbers on the tag to the dispatcher. After viewing the video footage, the officer admitted he was mistaken when he initially testified he used his flashlight to read the tag. Supp. Tr. 19. The officer testified he had difficulty initially reading the tag due to the tint on the window, and the trial court did not err in making a finding the tint contributed to the officer's belief the tag was not in plain view when he initially stopped the vehicle.

**{¶22}** We find the trial court's findings concerning when and how the officer was able to read the tag were generally supported by the evidence in the case, and further were relevant only to the issue before the trial court of whether the officer had a reasonable suspicion of criminal activity to justify the initial stop, an issue Appellant has abandoned on appeal.

**{¶23}** The first and second assignments of error are overruled.

III., IV.

**{¶24}** In his third assignment of error, Appellant argues the trial court erred in finding he drove over a curb, giving the officer cause to detain him after observing the temporary tag. In his fourth assignment of error, Appellant argues the trial court erred in finding his agitation during the stop provided the officer with a suspicion of criminal activity to further detain him. Because both assignments of error address the same legal issue, we address them together.

**{¶25}** Appellant argues pursuant to *State v. Chatton*, 11 Ohio St.3d 59 (1984), once the officer observed a valid temporary tag in the rear window of his vehicle, the officer could approach his vehicle and explain to him the reason for the stop, but could not detain him absent specific and articulable facts which demonstrated the detention was reasonable. Appellant asserts he did not drive over a curb, but rather over a driveway to an adjacent church, and his agitation alone did not provide cause to detain him. Appellant argues the officer violated *Chatton* by continuing to detain him to request his license and registration. However, the case law in Ohio has developed and changed subsequent to *Chatton*.

**{¶26}** In *Rodriguez v. United States*, 575 U.S. 348 (2015), the United States Supreme Court held a traffic stop could not be prolonged for purpose of a canine sniff of a vehicle. However, in reaching this conclusion, the court discussed the mission of a traffic stop:

> Beyond determining whether to issue a traffic ticket, an officer's mission includes "ordinary inquiries incident to [the traffic] stop." *Caballes*, 543 U. S., at 408, 125 S. Ct. 834, 160 L. Ed. 2d 842. Typically such inquiries

involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance. See *Delaware v. Prouse,* 440 U. S. 648, 658-660, 99 S. Ct. 1391, 59 L. Ed. 2d 660 (1979). See also 4 W. LaFave, Search and Seizure §9.3(c), pp. 507-517 (5th ed. 2012). These checks serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly. See *Prouse*, 440 U. S., at 658-659, 99 S. Ct. 1391, 59 L. Ed. 2d 660; LaFave, Search and Seizure §9.3(c), at 516 (A "warrant check makes it possible to determine whether the apparent traffic violator is wanted for one or more previous traffic offenses.").

**{¶27}** *Id.* at 355.

**{¶28}** After *Rodriguez*, the Ohio Supreme Court decided *State v. Dunlap*, 2024-Ohio-4821. In that case, the officer received information the registered owner of a vehicle did not have a valid driver's license. Upon approaching the vehicle, it became immediately apparent to the officer that the driver of the vehicle did not match the physical description of the vehicle's owner. Nonetheless, the officer asked the driver for his operator's license, and determined the driver did not have a valid license.

**{¶29}** In a plurality opinion, the court held the officer could detain the driver for the purpose of checking the driver's license. The lead opinion of the court cited to *Rodriguez*, finding even though the initial reason for the stop dissipated upon the officer's observation of the driver, the mission of the stop, which included basic safety measures

such as checking the operator's license, registration, and proof of insurance, allowed the officer to detain the vehicle. *Id.* at ¶¶ 19-21.

**{¶30}** Most recently, a majority of the Ohio Supreme Court adopted the reasoning of the lead opinion in *Dunlap*, including its citation to *Rodriguez*, as controlling law in Ohio. In *State v. Fips*, 2026-Ohio-1207, the officer stopped a vehicle for a headlight violation. Upon approaching the vehicle, the officer determined the headlight was in fact operational. The officer asked the driver for his license. Fips told the officer he did not have it with him, and provided his name, date of birth, and social security number. Using this information, the officer determined Fips had failed to reinstate his driver's license, and had an outstanding arrest warrant. In holding the officer could detain Fips to check his driver's license information after determining the headlight, which was the original basis for the stop, was operational, the court held:

We conclude that the extension of the traffic stop in this case was reasonable. In reaching this conclusion, we adopt *Dunlap's* reading of *Rodriguez v. United States*, 575 U.S. 348, 135 S. Ct. 1609, 191 L. Ed. 2d 492 (2015). *See Dunlap* at ¶ 23 (lead opinion). Under *Rodriguez*, part of the mission of a traffic stop is to confirm that the driver is validly licensed. *Rodriguez* at 355. And once a traffic stop has been validly initiated, an officer is entitled to complete the mission of the stop, even after the initial reasonable suspicion has been dispelled. *Dunlap* at ¶ 23-24 (lead opinion). We also conclude that Fips's failure to produce a driver's license justified Officer Rose's extension of the stop to confirm whether Fips was a licensed driver.

**{¶31}** *Id*. at ¶ 12.

**{¶32}** Pursuant to *Fips* and *Rodriguez*, part of the mission of the stop in the instant case included checking Appellant's license, registration, and proof of insurance even after the officer dispelled the original basis of the stop by observing the vehicle displayed a proper temporary tag in the window. We therefore find the trial court did not err in finding Officer Shaffer could detain Appellant for the purpose of checking his license, registration, and proof of insurance.

**{¶33}** After determining Appellant's license was valid and he had no outstanding warrants, the officer decided to detain Appellant further for field sobriety testing. A request made of a validly detained motorist to perform field sobriety tests is generally outside the scope of the original stop and must be separately justified by other specific and articulable facts showing a reasonable basis for the request. *State v. Albaugh*, 2015-Ohio-3536, ¶ 18 (5th Dist.). Although requiring a driver to submit to a field sobriety test constitutes a seizure within the meaning of the Fourth Amendment, courts have generally held the intrusion on the driver's liberty resulting from a field sobriety test is minor, and the officer therefore need only have reasonable suspicion the driver is intoxicated in order to conduct a field sobriety test. *See State v. Bright,* 2010-Ohio-1111, ¶ 17 (5th Dist.). In reviewing this issue, we apply a "totality of the circumstances" approach. *See, e.g., State v. Lucking*, 2004-Ohio-90, ¶ 8 (12th Dist.), *citing State v. Freeman*, 64 Ohio St.2d 291 (1980). Reasonable suspicion constitutes something less than probable cause. *State v. Logan*, 2008-Ohio-2969, ¶ 15 (5th Dist.).

**{¶34}** During the detention of Appellant to check his documents, further observations by the officer led to a reasonable suspicion Appellant was driving impaired, justifying further detention for the purpose of conducting field sobriety tests. As

Appellant was stopping his vehicle, the officer testified he went over the curb before reentering the roadway and stopping. While Appellant argues he drove over the entrance to a church, the video from the police cruiser demonstrates Appellant's vehicle went up and over a curb before coming to a stop. When the officer approached the vehicle, Appellant was immediately agitated and aggressive toward the officer. Appellant's speech was slurred. While Appellant was able to produce his license, Appellant could not produce the vehicle's registration without significant difficulty. After Appellant called his mom and learned the registration should be in the glove compartment, he removed the documents from the glove compartment and initially handed Officer Shaffer a tire receipt. When the officer pointed out the document was not the registration, Appellant handed the officer a bank receipt. The officer was able to see the registration. He pointed out the registration, and asked for it in exchange for the tire receipt. However, after the officer gave the receipt to Appellant, Appellant handed it back to the officer. From the totality of the circumstances of the stop, we find the trial court did not err in concluding Officer Shaffer had a reasonable, articulable suspicion Appellant was impaired to justify detaining him for field sobriety tests.

{¶35} The third and fourth assignments of error are overruled.

{¶36} The judgment of the Tuscarawas County Court of Common Pleas is affirmed.

{¶37} Costs to Appellant.


By: Hoffman, P.J.

Montgomery, J. and

Popham, J. concur.